UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SILLS, CUMMIS & GROSS, P.C.<br><br>Plaintiff,<br><br>- against -<br><br>BETTY DUSANGE-HAYER, ISHAN HOLDINGS AND DEVELOPMENT CORPORATION, AND ERWIN SINGH BRAICH,<br><br>Defendants. | **ORDER**<br><br>19 Civ. 7463 (PGG) (SDA) |

PAUL G. GARDEPHE, U.S.D.J.:

Plaintiff Sills, Cummis & Gross P.C. brings this action against Dusange-Hayer,

Ishan Holdings and Development Corporation ("Ishan"), and Erwin Singh Braich, alleging (1) a

breach of contract claim against Dusange-Hayer and Ishan; (2) an account stated claim against

all Defendants; (3) a quantum meruit claim against all Defendants; (4) an unjust enrichment

claim against all Defendants; (5) a promissory estoppel claim against Braich; (6) a fraudulent

inducement claim against Braich; and (7) a breach of guaranty claim against Braich.  (Cmplt.

(Dkt. No. 1))

On July 8, 2020, this Court entered an Order of Default against all Defendants

(Dkt. No. 59) and referred this matter to Magistrate Judge Stewart Aaron for an inquest on

damages.  (Dkt. No. 61)  Judge Aaron issued a Report and Recommendation ("R&R") in which

he recommends that Plaintiff be awarded $370,355.87 in damages, along with pre-judgment

interest at nine percent per annum.  (R&R (Dkt. No. 67) at 9-10)  No party has objected to the

R&R.  For the reasons stated below, the R&R will be adopted in its entirety.

**BACKGROUND**

I.    **FACTS**[1]

Plaintiff Sills, Cummis & Gross P.C. is a full-service law firm with approximately 150 attorneys and an office located at 101 Park Avenue, New York, New York.  (Kaplan Aff. (Dkt. No. 64-1) ¶ 1; Cmplt. (Dkt. No. 1) ¶ 1)  Defendants Dusange-Hayer, Ishan, and Braich are all residents of Canada.  (Cmplt. (Dkt. No. 1) ¶¶ 2-4)

On February 1, 2017, Hayer and Ishan executed an Engagement Agreement (the "Agreement") with Plaintiff, whereby they retained Plaintiff's services for litigation advice and a potential civil action against Karnalyte Resources Inc. ("Karnalyte").  (Kaplan Aff. (Dkt. No. 64-1) ¶¶ 8, 10; Kaplan Aff., Ex. B)  Braich promised that – even though Hayer and Ishan were executing the Agreement – he would pay the invoices.  (Kaplan Aff. (Dkt. No. 64-1) ¶¶ 9, 19)  As part of its engagement, Plaintiff explored potential claims against Karnalyte, including claims under the Racketeer Influenced and Corrupt Organizations Act, the Foreign Trade Antitrust Improvement Act, the Sherman Act, and the Clayton Act. (Kaplan Aff. (Dkt. No. 64-1) ¶ 15)  Plaintiff also explored potential criminal charges, researched antitrust standing issues, and

---

[1]  The parties have not objected to Judge Aaron's recitation of the alleged facts.  Accordingly, the Court adopts his account of the facts in full.  See Silverman v. 3D Total Solutions, Inc., No. 18 CIV. 10231 (AT), 2020 WL 1285049 (S.D.N.Y. Mar. 18, 2020) ("Because the parties have not objected to the R&R's characterization of the background facts . . . , the Court adopts the R&R's 'Background' section . . . .").  Given Defendants' default, these facts are assumed to be true.  Idir v. La Calle TV, LLC, No. 19-CV-6251 (JGK), 2020 WL 4016425, at *2 (S.D.N.Y. July 15, 2020) ("In the event of a defendant's default, the plaintiff's properly pleaded allegations in the complaint, except those related to damages, are accepted as true."); see also City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (quoting Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004)); Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendant's] default, a court is required to accept all . . . factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." (citation omitted)).

2

advised on claims raised by Karnalyte in a related action pending in South Carolina.  (Id.)
Plaintiff kept Defendants apprised of all developments in the South Carolina action, including an
appeal, communications with the court, as well as motions and hearings and retention of local
counsel.  (See Kaplan Aff. (Dkt. No. 64-1) ¶ 16; R&R (Dkt. No. 67) at 3-4)

Plaintiff requires all attorneys and paralegals to contemporaneously record their
time as they perform work.  (Kaplan Aff. (Dkt. No. 64-1) ¶ 22)  At the end of each month, in the
regular course of business, Plaintiff's accounting department generates invoices from the
finalized time entries in its time entry system.  Paul Kaplan, as the originating attorney, reviewed
all invoices before they were transmitted to the clients, ensuring their accuracy.  (Id. ¶¶ 26-27;
Kaplan. Aff., Ex. D)  Invoices for services rendered between January 2017 and August 2017
were sent to Defendants, but remain unpaid.  The total unpaid balance of these invoices is
$370,355.87.  (Kaplan Aff. (Dkt. No. 64-1) ¶ 28; Kaplan Aff., Ex. D)  Defendants never raised
any objection to the invoices.  (Kaplan Aff. (Dkt. No. 64-1) ¶ 34; Kaplan Aff., Ex. E)  Indeed, in
a text message to Kaplan, Braich states that "[n]o one has objected yet to any hourly billing or
topic of research that cost Ishan Group $351 thousand USD."  (Kaplan Aff. (Dkt. No. 64-1) ¶¶
29-30 Kaplan Aff., Ex. E (Dkt. No. 64-1) at 62)  And in a July 27, 2018 text message, Braich
promises payment of Plaintiff's invoices.  (Sapir Decl., Ex. 3 (Dkt. No. 29-3))  Indeed, Braich
repeatedly represented to Plaintiff that payment was forthcoming.  (Kaplan Aff. (Dkt. No. 64-1)
¶ 30; Kaplan Aff., Ex. E)

Plaintiff seeks damages in the amount of $370,355.87, as well as pre-judgment
interest.  (Proposed Findings of Fact & Conclusions of Law ("Prop. Findings") (Dkt. No. 64) ¶¶
43, 47, 75-80)

II.      **PROCEDURAL HISTORY**

The Complaint was filed on August 9, 2019.  (Cmplt. (Dkt. No. 1))  On December 3, 2019, after Defendants were served and had failed to respond, Plaintiff sought certificates of default against all three Defendants.  (Dkt. Nos. 19-21)  The Clerk of Court issued certificates of default against each Defendant on December 9, 2019.  (Dkt. Nos. 23-25)

On January 7, 2020, this Court ordered that a show cause hearing would take place on February 6, 2020.  (Dkt. No. 28)  On January 23, 2020, the Court ordered Defendants to file notices of appearance by February 14, 2020, and adjourned the show cause hearing to February 20, 2020.  (Dkt. No. 31)  In a February 14, 2020 letter, Plaintiff asserted that notices of appearance Defendants Dusange-Hayer and Braich had purported to serve on Plaintiff were defective.  (Dkt. No. 34)

In a February 19, 2020 letter to the Court, Emmet Pierce – a director of Ishan – stated that Defendant Ishan was seeking a lawyer and that it expected to retain a lawyer within the next 21 days.  (Dkt. No. 36)  The Court then adjourned the show cause hearing to March 19, 2020, in order to "(1) permit the individual defendants to submit properly executed notices of pro se appearance; (2) provide the corporate defendant with sufficient time to retain counsel; and (3) permit all Defendants to file an opposition to the pending motion for a default judgment."  (Dkt. No. 37)

Defendants Dusange-Hayer and Braich filed pro se notices of appearance on February 24, 2020 (Dkt. Nos. 39-40) and on March 11, 2020 (Dkt. Nos. 41-42).  On March 16, 2020, the default judgment hearing was adjourned to April 23, 2020, due to the global pandemic. (Dkt. No. 43)  Plaintiff served the March 16, 2020 order on Defendants via email and FedEx on March 17, 2020, and filed affirmations of service that same day.  (Dkt. Nos. 44, 45)

On March 17, 2020, all three defendants submitted an opposition to Plaintiff's application for a default judgment, even though Defendant Ishan had not retained counsel or appeared in the action.  (Dkt. No. 46)  In their submission, Defendants state that they are "Canadian and lay litigants and . . . were under the impression that [a]rbitration had to occur before any litigation began."  (Id. at 3)  Defendants ask that this Court deny the motion for a default judgment and either allow the case to proceed or order "the [a]rbitration to proceed."  (Id. at 6)  No Defendant has ever filed an answer or otherwise responded to the Complaint, however.

Due to the global pandemic, the default judgment hearing was further adjourned to May 28, 2020 (Dkt. No. 50), June 30, 2020 (Dkt. No. 53), and July 2, 2020 (Dkt. No. 56). Although the order adjourning the hearing until July 2, 2020 was served on Defendants via email and FedEx, Dkt. Nos. 57, 58, Defendants did not appear at the hearing, and no notice of appearance was filed on behalf of Defendant Ishan.  Accordingly, this Court entered an Order of Default on July 7, 2020.  (Dkt. No. 59)

On July 9, 2020, this case was referred to Judge Aaron for an inquest on damages (see Order Referring Case to Magistrate Judge (Dkt. No. 61)), and Plaintiff was directed to file Proposed Findings of Fact and Conclusions of Law.  (See Dkt. No. 62)  Plaintiff filed Proposed Findings of Fact and Conclusions of Law, with an accompanying affirmation, on July 23, 2020. (Prop. Findings (Dkt. No. 64))  Plaintiff also filed certificates of service indicating that the proposed findings had been served on Defendants.  (See Certificates of Service (Dkt. No. 65)) Defendants have not responded to Plaintiff's proposed findings.

On August 14, 2020, Judge Aaron issued an 11-page R&R, in which he recommends awarding Plaintiff $370,355.87, as well as pre-judgment interest at nine percent per annum.  (R&R (Dkt. No. 67) at 9-10)  The R&R notifies the parties that they have fourteen days

to file any objections pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).  (Id. at 11)
The R&R further states that "failure to object within fourteen (14 days) will result in a waiver of
objections and will preclude appellate review."  (Id. (emphasis omitted))  No party has filed
objections to the R&R.

## DISCUSSION

## I.   LEGAL STANDARD

In reviewing a report and recommendation, a district court "may accept, reject, or
modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28
U.S.C. § 636(b)(1)(C).  Where a timely objection has been made to the magistrate judge's
recommendations, the district court judge "shall make a de novo determination of those portions
of the report or specified proposed findings or recommendations to which objection is made."
Id.

Where, as here, no objections are filed to a magistrate judge's R&R – despite
clear warning that a failure to file objections will result in a waiver of judicial review – judicial
review has been waived.  See Thomas v. Arn, 474 U.S. 140, 147-48 (1985); see also Mario v. P
& C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice
of the consequences, failure timely to object to a magistrate's report and recommendation
operates as a waiver of further judicial review of the magistrate's decision." (citing Small v.
Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam))); see also
Spence v. Superintendent, Great Meadow Correctional Facility, 219 F.3d 162, 174 (2d Cir. 2000)
("Failure to timely object to a report generally waives any further judicial review of the findings
contained in the report.").

## II.   ANALYSIS

Although the parties have waived their right to judicial review, the Court has nonetheless reviewed Judge Aaron's R&R for clear error.  As discussed below, the Court finds no error – clear or otherwise – in Judge Aaron's well-reasoned R&R.

### A.   Liability

As Judge Aaron notes, for purposes of liability, "the district court must accept as true all of the well-pleaded factual allegations in the plaintiff's Complaint, except those relating to damages."  (R&R (Dkt. No. 67) at 6)  The Court must, however, "determine whether these factual allegations, taken as true, establish defendants' liability as a matter of law."  (Id. (citing Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009); Cont'l Indus. Grp., Inc. v. Altunkilic, 788 F. App'x 37, 40 (2d Cir. 2019)))  A district court must also "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  (Id. at 6-7 (citing Am. Jewish Comm. v. Berman, No. 15-CV-05983 (LAK) (JLC), 2016 WL 3365313, at *3 (S.D.N.Y. June 15, 2016) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted))))

Plaintiff seeks recovery under a number of legal theories.

### 1.   Breach of Contract Claim Against Ishan and Dusange-Hayer

Judge Aaron finds that Plaintiff has established the elements of a breach of contract claim against Ishan and Dusange-Hayer – the two signatories to the Agreement.  (R&R (Dkt. No. 67) at 7)  Under New York law, "to prevail on a breach of contract claim . . . a plaintiff must prove [i] a contract; [ii] performance of the contract by one party; [iii] breach by the other party; and [iv] damages."  Nielsen Co. (U.S.), LLC v. Success Sys., Inc., 112 F. Supp. 3d 83, 97 (S.D.N.Y. 2015) (citations omitted).  Here, Plaintiff has shown the existence of a contract;

performance by Plaintiff; breach by Ishan and Dusange-Hayer – in that they failed to honor their obligations to pay amounts due under the Agreement; and damages suffered as a result of the breach, in the amount of the unpaid invoices.  (R&R (Dkt. No. 67) at 7)  Plaintiff does not assert a breach of contract claim against Braich, who is not a party to the Agreement.  (Id. at 7-8 (citing EEOC v. Waffle House, Inc., 534 U.S. 279, 294 (2002)))

### 2.    Promissory Estoppel Claim against Braich

Under New York law, a party claiming promissory estoppel is required to demonstrate that (1) a speaker made a clear and unambiguous promise; (2) it was reasonable and foreseeable for the party to whom the promise was made to rely upon the promise; and (3) the person to whom the promise was made relied on the promise to his or her detriment.  (Id. (citing Henneberry v. Sumitomo Corp. of Am., 532 F. Supp. 2d 523, 533 (S.D.N.Y. 2007) (citation omitted)))  Because Braich made clear and unambiguous promises to Plaintiff that he would pay Plaintiff's invoices, it was reasonable for Plaintiff to rely on his promises, and Plaintiff did in fact rely on those promises.  (Id. at 8-9 (citing Prop. Findings (Dkt. No. 64) ¶¶ 63-68))

### 3.    Additional Liability Theories

The Complaint alleges additional claims against Defendants, including for account stated, quantum meruit and unjust enrichment.  (Cmplt. (Dkt. No. 1) ¶¶ 30-42, 50-61; Prop. Findings (Dkt. No. 64) ¶¶ 48-50, 53-62)  Since a judgment on Plaintiff's breach of contract and promissory estoppel claims will result in a damages award granting Plaintiff all the damages it seeks, Judge Aaron did not address the remaining claims.  (R&R (Dkt. No. 67) at 8, 9 n.5)

### B.    Damages

Plaintiff seeks an award of $370,355.87, which reflects Plaintiff's invoices for the legal services it rendered.  (Cmplt. (Dkt. No. 1) ad damnum cl.; Prop. Findings (Dkt. No. 64) ¶

74)  Judge Aaron recommends that Plaintiff be awarded all the damages it seeks – $370,355.87 –

and pre-judgment interest at nine percent per annum from each invoice date against all

Defendants.  (R&R (Dkt. No. 67) at 10)  No party has objected to Judge Aaron's

recommendations and, as discussed below, this Court finds no clear error in his analysis.

### 1.   **Breach of Contract Damages**

"Under New York law, a successful plaintiff in a breach of contract action is

entitled to damages in the 'amount necessary to put the plaintiff in the same economic position

he would have been in had the defendant fulfilled his contract.'" Am. Jewish Comm., 2016 WL

3365313, at *5 (quoting Scholastic, Inc. v. Snap TV, Inc., No. 09-CV-04349 (GBD) (GWG),

2011 WL 1330246, at *3 (S.D.N.Y. Apr. 8, 2011)).  Based upon the Kaplan Affirmation and the

exhibits thereto, Judge Aaron found that Plaintiff has established that, in order to put Plaintiff in

the same economic position it would have been absent the breach by Ishan and Dusange-Hayer,

Plaintiff is entitled to damages in the amount of $370,355.87.  (R&R (Dkt. No. 67) at 8)

### 2.   **Promissory Estoppel Damages**

"[T]he damages recoverable in a promissory estoppel case are sometimes referred

to as 'reliance damages,' namely, the actual expenditure made in preparation for performance or

in performing the work which has been induced by the defendant-promisor." Cyberchron Corp.

v. Calldata Systems Development, Inc., 47 F.3d 39, 46 (2d Cir. 1995) (citations omitted).

Plaintiff's allegations establish that it performed legal work that was induced by Braich's

promise to pay Plaintiff for its legal services.  Consequently, Plaintiff is entitled to recover the

full amount of its fees -- $370,355.87 – from Braich.  (See R&R (Dkt. No. 67) at 9)

3.      **Pre-Judgment Interest**

Plaintiff also seeks pre-judgment interest.  (<u>See</u> Prop. Findings (Dkt. No. 64) ¶¶ 75-80)

Section 5001 of the New York Civil Practice Law & Rules provides, in part, that "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract. . . . Interest shall be computed from the earliest ascertainable date the cause of action existed. . . ."  N.Y. C.P.L.R. §§ 5001(a)-(b).  Pre-judgment interest is also awarded in actions premised on promissory estoppel.  <u>See</u> <u>Re-Source Am., Inc. v. Corning Inc.</u>, No. 07-CV-06048 (CJS), 2009 WL 2179254, at *10 (W.D.N.Y. July 22, 2009) (addressing pre-judgment interest in context of a promissory estoppel claim).  Accordingly, Plaintiff is entitled to pre-judgment interest on both its breach of contract claim against Ishan and Dusange-Hayer, and its promissory estoppel claim against Braich.  (<u>See</u> R&R (Dkt. No. 67) at 10)

The rate of pre-judgment interest is nine percent <u>per</u> <u>annum</u> on the breach of contract claim against Ishan and Dusange-Hayer.  <u>See</u> CPLR § 5004.  The Court, in its discretion, applies a nine percent <u>per</u> <u>annum</u> rate on the promissory estoppel claim against Braich as well.  <u>See</u> CPLR § 5001(a).

## CONCLUSION

For the reasons stated above, Judge Aaron's R&R is adopted in its entirety. Plaintiff is awarded $370,355.87 in damages, along with pre-judgment interest at the rate of nine percent <u>per</u> <u>annum</u>, to be calculated from the date of each invoice.  Plaintiff is to submit a

proposed judgment by September 9, 2020.

Dated: New York, New York
         September 3, 2020                    SO ORDERED.

                                             Paul G. Gardephe
                                             United States District Judge